Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7156 | **DATE** | 11/26/2002 |
| **CASE TITLE** | David White Instruments, LLC v. TLZ, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court recommends that David White's motion for TRO be denied. To preserve confidentiality of certain information, the Court has prepared a public Report and Recommendation as well as a sealed version containing proprietary materials. Sentences in the sealed version which differ from the public version have been ***bolded and italicized***. Enter Report and Recommendation under seal and Report and Recommendation.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 04 2002 date docketed | 40 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 11/26/2002 date mailed notice | |
| mm | courtroom deputy's initials | 02 NOV 27 AM 11:06 | mm777 mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID WHITE INSTRUMENTS, LLC, )
f/k/a DAVID WHITE FORMATION, )
)
        Plaintiff, )
)
vs. ) Case No. 02 C 7156
)
TLZ, INC. d/b/a TOOLZ, and )
TOOLZ LIMITED, )
)
        Defendants. )

DOCKETED
DEC 0 4 2002

## REPORT AND RECOMMENDATION

NAN R. NOLAN, Magistrate Judge:

Plaintiff David White Instruments LLC, formerly known as David White Formation, LLC seeks a temporary restraining order ("TRO") to prevent defendants TLZ, Inc. d/b/a Toolz and Toolz Limited[1] ("Toolz") from continuing to make, use, sell or offer for sale certain optical surveying instruments that allegedly infringe plaintiff's design patent and trade dress. The motion was referred to this Court for an evidentiary hearing and a Report and Recommendation as to whether the motion should be granted. In making its recommendation on this matter, the Court has considered the facts and documents set forth in the complaint, the motion for a TRO and Toolz's opposition brief, as well as the witness testimony and exhibits presented at a hearing on October 27, 2002. For the reasons set forth below, the Court recommends that plaintiff's motion for a TRO be denied.

---

[1]     For purposes of this motion for TRO only, plaintiff does not seek relief against Toolz Limited of Hong Kong. Tr. 203, 254.

## FACTUAL BACKGROUND

David White has been supplying optical and laser instruments to the building and construction industries since 1895. On May 24, 2002, CST/berger, a worldwide venture with 270 employees and over 1,000 products, purchased substantially all of the assets of David White, LLC, including its "patents, trademarks, trade secrets, trade names, names, brands, methods of doing business and other intellectual property and all good will associated with any of the foregoing." PX A; Tr. 44, 46-47. Plaintiff David White Instruments, LLC was formed as an affiliate of CST/berger to sell the David White product line. Dubrick Tr. 41; Def. Mem., p. 1. As part of the sale, plaintiff purchased and was assigned United States Design Patent No. D440,506 ("'506 patent"); Dubrick Tr. 46. Plaintiff's AL8 Series automatic levels are sold pursuant to the design claimed in the '506 patent. Dubrick Tr. 50, 53. Plaintiff also manufactures and sells manual levels and level-transits under the name "Meridian." Plaintiff says that it based its decision to purchase the David White product line on consumer recognition of the product designs and the "substantial good will that has been developed over many years in the David White trademark and unique and distinctive instrument designs." Pl. Mem., p. 5; Dubrick Tr. 48.

Toolz is a small privately-owned company founded in 1998. Soucy Decl. ¶2. Toolz first manufactured only laser products but in 2001, it decided to enter the optical measurement market as well. Shortly after making this decision, Toolz was approached about acquiring the David White assets and, in February 2002, it signed a confidentiality agreement in that regard. Soucy Decl. ¶11; Soucy Tr. 205, 221; PX 5. In the spring of 2002, Toolz bid on certain of the David White assets but the bid was not accepted. Then, at the August 2002 National Hardware Show in

Chicago and again at the September 2002 Handy Hardware Show in Houston, Toolz displayed and offered for sale automatic and manual levels similar to the ones offered by plaintiff under the David White label.

On October 4, 2002, plaintiff filed a complaint and a motion for a TRO with respect to its AL8 and Meridian Series optical levels. Specifically, plaintiff claims that Toolz' automatic levels infringe the David White AL8 Series automatic levels embodied in the '506 design patent, and that Toolz' manual levels and level-transits infringe the David White Meridian Series trade dress.[2]

## DISCUSSION

A TRO is an "extraordinary and drastic" remedy that should only be granted upon a clear showing of need. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A plaintiff seeking a TRO or preliminary injunction must show: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the preliminary injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Plaintiff's TRO motion can only be granted if it establishes both of the first two factors; i.e., likelihood of success on the merits and irreparable harm. *Id.* If plaintiff establishes the first factor by making a clear showing of both validity and infringement, it is entitled to a rebuttable presumption of irreparable harm. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001).

---

[2] For purposes of this motion for a TRO, the Court will not distinguish between the product prototypes shown at the trade shows and the finished products, which differ primarily with respect to labeling and color. Tr. 22-23.

3

### A.  Likelihood of Success

#### 1.  Design Patent Infringement

To demonstrate a likelihood of success on the merits of its design patent infringement claim, plaintiff must show that, in light of the presumptions and burdens that will inhere at a trial on the merits, (1) plaintiff will likely prove that Toolz infringes the '506 patent, and (2) plaintiff's infringement claim will likely withstand Toolz' challenges to the validity of the '506 patent. *Amazon.com*, 239 F.3d at 1351. If Toolz raises a substantial question concerning either infringement or invalidity by asserting an infringement or invalidity defense that plaintiff cannot prove "lacks substantial merit," the preliminary injunction should not issue. *Id.* at 1350-51.

Infringement of the '506 design patent requires a showing that the accused design is "substantially the same" as the claimed design such that an ordinary purchaser – in this case, professional builders, contractors and carpenters – would be deceived into thinking that one is the other. *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002); *Payless Shoesource, Inc. v. Reebok International Limited*, 998 F.2d 985, 990 (Fed. Cir. 1993). Design patents only cover the novel features of the patented design; that is, "the novelty which distinguishes the patented design from the prior art." *Contessa Food Products*, 282 F.3d at 1377; *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997). In addition, design patents only protect the ornamental as opposed to the functional features of the patented design. *Unidynamics Corp. v. Automatic Products Int'l, Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998); *OddzOn*, 122 F.3d at 1405 ("[t]he patentee must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental").

4

Plaintiff identifies four features of the '506 patent which it claims are both novel – i.e., not reflected in the prior art – and non-functional: (1) the "rounded-delta" level vial recess; (2) the raised semi-cylindrical midsection; (3) the proximal body member with a flat top, a flat bottom and rounded sides; and (4) the overall proportions and relationships of the components. Pl. Mem., p. 11. The overall proportions and relationships of the components cannot be considered a point of novelty because it improperly merges the "ordinary observer" and "point of novelty" tests. *See, e.g., Contessa Food Products*, 282 F.3d at 1377 ("it is legal error to merge the two tests, for example by relying on the claimed overall design as the point of novelty"). In addition, plaintiff describes the design of the compensator housing as the proximal body member with a flat top, a flat bottom and rounded sides, but the actual patented design has beveled sides on the top portion of the telescope nearest the eyepiece and a step on the bottom. The Toolz automatic level has neither of these features, raising a substantial question as to whether the Toolz product infringes the '506 patent in this regard.

With respect to the rounded-delta level vial recess and raised semi-cylindrical midsection, Toolz presented evidence that both features are dictated by function. Daniel Hill, Toolz' Product Manager and a former engineering geologist, testified that bubble vials are often recessed to ensure that they stay level; indeed, he identified and presented at the hearing several other automatic levels with recessed bubble vials in a similar location on the product. Hill Tr. 143, 161-63; DX 21, 22, 23. As for the raised semi-cylindrical midsection housing the peep sight, Hill testified that it is helpful to have this feature on top so that it is near the telescope line of sight. He also stated that the center placement allows for easier focus on far objects, and that the rounded housing both protects the peep sight from breaking and allows water to run off the sides

to prevent puddling. Hill Tr. 158-60, 192. In addition, plaintiff's advertisements for the automatic level state that the "[s]ighting scope and bubble vial are built into the housing for greater durability." PX G.

On the other hand, plaintiff presented Edward Ellison, Manager of David White Product Integration, who testified that the rounded-delta shape around the recessed level bubble vial and the rounded shape of the raised semi-cylindrical midsection housing the peep sight are both ornamental. Ellison Tr. 85-88. However, Ellison is not an engineer or industrial designer and did not design the product at issue, so his opinion on this issue does not carry significant weight. Ellison Tr. 106-07. Hill did testify that at least with respect to the peep sight, the rounded shape promoted aesthetic continuity. Hill Tr. 192-93. Nevertheless, Toolz has raised a substantial question as to whether plaintiff's identified points of novelty are functional in nature, which precludes a finding that plaintiff has a reasonable likelihood of success on its design patent infringement claim for purposes of a TRO.[3] *See Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 661, n.6 (7th Cir. 1995) (to establish functionality, accused infringer need only establish that the feature is "at least one of a few superior designs for its *de facto* purpose").

### 2. Trade Dress Infringement

"Trade dress" refers to "the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques."

---

[3] Toolz has also challenged the validity of the '506 patent, claiming that the patent depicts "an obvious combination of well-known design features." Def. Mem., p. 13. Given the Court's findings on the infringement question, it need not reach the issue of validity at this preliminary stage of the litigation. This decision does not prevent Toolz from asserting any validity challenge raised during the TRO proceedings or from relying on admissible evidence presented at the TRO hearing in support of its invalidity defense at trial.

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 636 (7th Cir. 1999) (internal quotations omitted). To demonstrate a likelihood of success on its trade dress infringement claim, plaintiff must show that (1) it has a protectable trade dress; that is, its trade dress has acquired secondary meaning; and (2) the similarity of Toolz' trade dress is likely to cause the purchasing public to be confused as to source. *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 214 (2000). The Court addresses each in turn.

### a. Secondary Meaning

A product acquires secondary meaning when "in the minds of the public, the primary significance of [the dress] is to identify the source of the product rather than the product itself." *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 163 (1995). Consumers must care that the product including the design or dress comes from a particular source and "must desire the product with the particular feature because it signifies that producer." *Thomas & Betts*, 65 F.3d at 658-59. To establish secondary meaning, courts consider "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992); *Bretford Manufacturing, Inc. v. Smith System Manufacturing Co.*, 116 F. Supp. 2d 951, 956 (N.D. Ill. 2000).

Plaintiff claims that it has sold and advertised its Meridian Series manual levels and level-transits for nearly two decades, which creates a presumption of secondary meaning. Gregory F. Dubrick, Vice President of David White Instruments, LLC, testified that plaintiff's due diligence in connection with the asset purchase revealed strong consumer recognition of the David White product line. Dubrick Tr. 43. However, Dubrick was unable to identify any

7

specific customer surveys to that effect. Dubrick Tr. 71-72. Thus, plaintiff has not presented sufficient evidence that the public has come to associate the trade dress with the David White label. *See Bretford*, 116 F. Supp. 2d at 956 (evidence that the plaintiff had used a design for a number of years insufficient to demonstrate secondary meaning absent evidence that consumers recognized the design as "indicative of origin"). And plaintiff's advertising arguably promotes the functional features of the product as opposed to its distinctive trade dress. PX G (promoting product clarity, accuracy, precision and ease of use). *See also Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1190 (7th Cir. 1989) ("it is well-established that trade dress protection does not extend to features already shared by different brands on the market").

On the other hand, plaintiff has presented evidence that the Meridian Series has generated a high volume of sales and revenues over the years, and has a longstanding reputation for manufacturing reliable, high-quality instruments. Pl. Mem., pp. 19-20; Dubrick Tr. 54-55. Plaintiff has also raised at least some question as to whether Toolz deliberately copied the Meridian Series levels. Hill Tr. 185-86. But even assuming that this was sufficient to establish secondary meaning, plaintiff has failed to demonstrate a likelihood of success on the issue of customer confusion.

### b. Likelihood of Confusion

In determining whether there is a likelihood of confusion, the Seventh Circuit has considered several factors to be important: (1) similarity of the trade dresses; (2) similarity of the products; (3) area and manner of advertising and use; (4) degree of care likely to be used by consumers; (5) strength of plaintiff's trade dress; (6) whether any actual confusion exists; and (7) defendant's intent to palm off its goods as those of plaintiff. *See, e.g., Ty, Inc. v. Jones Group,*

*Inc.*, 98 F. Supp. 2d 988, 998 (N.D. Ill. 2000). There is a high degree of similarity in the overall appearance of the levels manufactured by plaintiff and Toolz, and both parties are marketing to the same consumers; indeed, they both attended the same trade shows in August and September of this year. Dubrick Tr. 58-59, 61; Light Tr. 135-36; Hill Tr. 187-88.

However, the evidence indicates that those customers and potential customers are sophisticated and that they exercise a significant degree of care in purchasing level products, which cost between $225 and $425. Ellison Tr. 130-31; Def. Mem., pp. 22-23. In addition, Toolz has prominently marked its products and the outer packaging with the RoboToolz and Porter-Cable marks.[4] DX 1, 2, 14, 15. These factors undermine any claim that Toolz is trying to "palm off" its products as those of plaintiff, and weigh against a finding of likely confusion. *See, e.g., Pampered Chef, Ltd. v. Magic Kitchen, Inc.*, 12 F. Supp. 2d 785, 795 (N.D. Ill. 1998) (defendant's use of its identifying mark "necessarily makes us seriously doubt whether it could be accused of attempting to 'palm off' [the alleged infringing product] as [plaintiff's] or trying to confuse the public into thinking that the latter company was the origin of its two [products]"); *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 383 (7th Cir. 1996) ("in the case of a high-priced, single-purchase product, there is generally no likelihood of confusion when the manufacturer's name is clearly displayed on the product").

On balance, plaintiff has not presented sufficient evidence that the sophisticated contractors, professional builders and carpenters who purchase its levels and level-transits will

---

[4] Toolz and Porter-Cable have entered into a licensing agreement under which Toolz may use the Porter-Cable mark on its products. Soucy Decl. ¶12.

likely be confused as to the source of the products. Thus, plaintiff has failed to demonstrate a reasonable likelihood of success on its trade dress infringement claim.

**B.      Irreparable Harm and Public Interest**

Having determined that plaintiff presented insufficient evidence of a reasonable likelihood of success on the merits of its infringement claims, the Court need not address the issues of irreparable harm and public interest. *Thomas & Betts*, 65 F.3d at 664; *Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.*, 262 F.3d 1333, 1339 (Fed. Cir. 2001). Nevertheless, the Court notes that these factors also weigh against granting a TRO.

Irreparable harm is harm that cannot be compensated by money damages. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Irreparable harm may be established by showing that the alleged infringer is financially irresponsible or might be judgment-proof at the end of the litigation. *Cordis Corp. v. Medtronic, Inc.*, 780 F.2d 991, 996 (Fed. Cir. 1985). Plaintiff has made some showing that it will suffer harm in the form of lost profits and good will if the Court does not issue a TRO. However, plaintiff has not made an adequate showing that it cannot be compensated with money damages in the absence of a TRO. *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 619 (7th Cir. 1995) ("[d]amages in trademark cases are hard to measure, but the possibility of compensation offers sufficient protection to a trademark owner, when an injunction bids fair to stifle competition and injure consumers in order to ward off occasional confusion"). On these facts, the Court cannot say that the balance of harm tips in plaintiff's favor, and a TRO is not appropriate. *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) ("hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating"; court may

properly deny injunction where "a grant might destroy [the defendant] while a denial would leave [the plaintiff] a going concern"); *Flotec, Inc. v. Southern Research, Inc.*, 16 F. Supp. 2d 992, 1012 (S.D. Ind. 1998) (denying preliminary injunction where plaintiff would suffer irreparable harm in the absence of an injunction but defendant, a "significant new competitor," would be shut down for a substantial period of time if the injunction was granted).

The public interest also weighs against granting a TRO in this case. "When deciding whether to grant or withhold equitable relief a court must give high regard to the interest of the general public, which is a great beneficiary from competition." *August Storck*, 59 F.3d at 619. The public's interest in competition and product availability carries the day given plaintiff's inability to show a reasonable likelihood of success on its infringement claims. *Id.*

## CONCLUSION

For the reasons stated above, plaintiff's motion for a TRO (Docket Entry #8-2) should be denied. The district court has advised that counsel has ten days from the date of service of this Court's Report and Recommendation regarding plaintiff's supplemental motion for TRO to file objections to this Report and Recommendation with the Honorable John W. Darrah. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. §636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Lorentzen v. Adnerson Pest Control*, 64 F.3d 327 (7th Cir. 1995).

NAN R. NOLAN
United States Magistrate Judge

Dated: November 25, 2002