# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7156 | **DATE** | 1/6/2003 |
| **CASE TITLE** | David White Instruments, LLC vs. TLZ, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] David White's supplemental motion for TRO is denied. To preserve the confidentiality of certain information, the Court has prepared a public memorandum opinion and order as well as a sealed version containing proprietary materials. Sentences in the sealed version which differ from the public version have been ***bolded and italicized***. Enter memorandum opinion and order under seal, dated 12/19/02, and memorandum opinion and order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 09 2003 | |
| | Notified counsel by telephone. | | date docketed | 62 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| cav | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID WHITE INSTRUMENTS, LLC, )
f/k/a DAVID WHITE FORMATION, )
)
Plaintiff, )
)
vs. ) Case No. 02 C 7156
)
TLZ, INC. d/b/a TOOLZ, and )
TOOLZ LIMITED, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

DOCKETED
JAN - 9 2003

NAN R. NOLAN, Magistrate Judge:

On October 4, 2002, plaintiff David White Instruments LLC, formerly known as David White Formation, LLC filed a complaint and a motion for a temporary restraining order ("TRO") to prevent defendants TLZ, Inc. d/b/a Toolz and Toolz Limited[1] ("Toolz") from continuing to make, use, sell or offer for sale certain optical surveying instruments that allegedly infringe plaintiff's design patent and trade dress. On November 12, 2002, this Court denied the TRO. *See* Memorandum Opinion and Order of 11/12/02. Plaintiff now seeks a TRO to prevent Toolz from continuing to use Manufacturer X to make its allegedly infringing products. For the reasons set forth below, the supplemental motion for a TRO is also denied.

DOCKETED
JAN - 9 2003

---

[1] For purposes of plaintiff's motions for TRO only, plaintiff does not seek relief against Toolz Limited of Hong Kong. Tr. 203, 254.

**FACTUAL BACKGROUND**[2]

In early 2001, Toolz was approached about purchasing the assets of David White, LLC. Toolz entered into negotiations with David White and obtained information about the company pursuant to two Confidentiality Agreements dated March 19, 2001 and February 11, 2002, respectively. Both agreements prohibit Toolz from using David White's "Confidential Information." PX E, F. Toolz ultimately bid on certain of the David White assets but lost to CST/berger, which purchased substantially all of the assets on May 24, 2002. Plaintiff David White Instruments, LLC was formed as an affiliate of CST/berger to sell the David White product line, including the manual and automatic optical levels at issue in this case.

At the October 30, 2002 hearing on the first TRO, Daniel Hill, Toolz' Product Manager, and Steven Soucy, Toolz' Director of Finance, testified that Toolz is using Manufacturer X to make its optical levels. Plaintiff now claims that the identity of its manufacturer constitutes "Confidential Information" under the Confidentiality Agreements and a protectable trade secret. Pl. Add'l Mem., pp. 4-5, 8-10. Plaintiff seeks a TRO to prevent Toolz from further using Manufacturer X to produce its allegedly infringing products. Toolz argues that it knew about Manufacturer X before it received any information from David White and that, in any event, information about Manufacturer X and its customers is publicly available. Thus, Toolz says, the identity of David White's manufacturer is not confidential and there is no basis for a TRO.

---

[2] This opinion assumes familiarity with the facts set forth in the Court's November 12, 2002 Memorandum Opinion and Order.

## DISCUSSION

A TRO is an "extraordinary and drastic" remedy that should only be granted upon a clear showing of need. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A plaintiff seeking a TRO or preliminary injunction must show: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the preliminary injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001); *Jones v. InfoCure Corp.*, 310 F.3d 529, 534 (7th Cir. 2002). Plaintiff's TRO motion can only be granted if it establishes both of the first two factors; i.e., likelihood of success on the merits and irreparable harm. *Amazon.com*, 239 F.3d at 1350. If plaintiff establishes the first factor by making a clear showing of both validity and infringement, it is entitled to a rebuttable presumption of irreparable harm. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001).

### A. Likelihood of Success

#### 1. Breach of Confidentiality Agreements

To demonstrate a likelihood of success on the merits of a claim for breach of the Confidentiality Agreements, plaintiff must show (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach by Toolz; and (4) resultant injury to plaintiff. *Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 206, 733 N.E.2d 345, 351 (2000). Toolz argues that plaintiff cannot establish a breach because the identity of Manufacturer X does not constitute Confidential Information. Under both Agreements, information is not confidential if (1) it was known to Toolz prior to the time it was disclosed by David White; (2) it was published

3

or publicly available at the time it was disclosed to Toolz; or (3) it was disclosed to Toolz by a third party not under any obligation of confidence to David White. Def. Mem., p. 6; PX E ¶4, F ¶1.

Toolz claims that it already knew about Manufacturer X from publicly available sources at the time David White disclosed the information, citing affidavits from James W. Lyon, Managing Director of Hong Kong Operations of Toolz, Ltd., and Qin Yunli, General Manager of Representative Y, the trading company for Manufacturer X. Lyon states that Toolz was in contact with Representative Y, which represents Manufacturer X, as early as August 2000. Lyon Aff. ¶13. At that time, Toolz was investigating manufacturers that could produce, among other things, optical levels, and looked primarily to Chinese manufacturers because they were already making parts for Toolz' laser measuring devices. *Id.* ¶¶4-5, 10-12. One of the first companies Toolz contacted was Representative Y. *Id.* ¶13. Toolz produced a letter from Representative Y dated August 12, 2000, several months before Toolz began discussions with David White in 2001, and claims that the document establishes that Toolz already knew about Manufacturer X when it signed the Confidentiality Agreements. Ex. C to DX 3.

Plaintiff argues that even if Toolz knew about Manufacturer X as a manufacturer of optical products, it did not know about David White's relationship with Manufacturer X prior to receiving the information in connection with its potential purchase of the David White assets. Pl. Reply, p. 1. This appears to be a distinction without a difference; if Toolz independently knew about and was in contact with Manufacturer X in 2000, its identity could not become confidential merely because David White later disclosed its relationship with the manufacturer in connection with a confidentiality agreement in 2001. Moreover, Toolz has also presented evidence that the

4

identity of the David White manufacturer was publicly available and easily ascertainable in the tooling industry. According to Lyon and Qin, trade shows provide the largest source of information regarding Chinese manufacturers. Lyon Aff. ¶¶6-7; Qin Aff. ¶¶3-4. Representative Y attends many trade shows during which it explains the products Manufacturer X manufactures, and any interested party may inquire about Manufacturer X and the companies to which it has supplied products. According to Qin, she has "in the past told potential buyers that [Manufacturer X] manufactured optical products for David White, and will continue to provide buyers with such information if they ask me for it." Qin also states that if Representative Y is not specifically displaying David White products at a particular trade show, it will freely divulge that information upon request. Qin Aff. ¶¶3-6. Lyon adds that he personally attends trade shows in China and that "a company representative need only ask the manufacturer's representative at the fair to whom they provide products to or peruse the manufacturer's product catalogs to gain such information." Lyon Aff. ¶¶6-8, 11; Ex. A to Lyon Aff.

Plaintiff argues that Qin's affidavit is unreliably vague because she does not identify any specific person she told about David White's relationship with Manufacturer X. In addition, Lyon never states that he in fact learned that Manufacturer X was David White's manufacturer from the trade shows. Pl. Reply, p. 3. At this stage of the proceedings, however, the affidavits taken together are sufficient to raise a substantial question as to whether that information was easily ascertainable in the tooling industry. Plaintiff also notes that in April 2001, Qin signed a Manufacturing Agreement with David White on behalf of Representative Y expressly acknowledging that the identity of David White's manufacturer was confidential. Manufacturer X entered into a similar Manufacturing Agreement with CST on May 8, 2002. Pl. Reply, pp. 3-4.

5

But this alleged acknowledgment does not refute Toolz' evidence that the information was publicly disclosed at trade shows and in catalogs, which would defeat plaintiff's claim of confidentiality. *See, e.g., Pope v. Alberto-Culver Co.*, 296 Ill. App. 3d 512, 518, 694 N.E.2d 615, 619 (1998) (defendant did not breach confidentiality and nondisclosure agreement where information at issue was not a confidential trade secret). Nor does it establish that the identity of Manufacturer X was kept confidential prior to April 2001. And the mere fact that Manufacturer X and David White/CST may have "stipulat[ed] that the identity of David White's (and even CST's) manufacturing source is 'Confidential Information'" does not establish any such stipulation between plaintiff and Toolz. Pl. Reply, p. 4. Indeed, unlike the Manufacturing Agreements, the Confidentiality Agreements do not specifically list manufacturing source as confidential.

Weighed against this evidence from Toolz is the following evidence from plaintiff: (1) Soucy testified at the October 30, 2002 hearing that "the name of the manufacturer was among the confidential information that was produced to Toolz under the confidentiality agreements with David White"; and (2) Toolz' counsel cleared the courtroom before asking questions about Manufacturer X and asked that the Court redact the manufacturer's name from its written opinion on the TRO. Pl. Reply, pp. 1-2, 4. However, Soucy's opinion is not especially persuasive because he is not an attorney and cannot speak to whether the information is confidential from a legal standpoint. Def. Mem., p. 8. Similarly, the actions of Toolz' attorney do little to establish that the identity of Manufacturer X was confidential as contemplated by the Confidentiality Agreements. As Toolz notes, "[c]ounsel's caution at a TRO hearing does not convert public information into confidential information." Def. Mem., p. 9.

6

On balance, plaintiff has not shown that it has a better than negligible likelihood of establishing that the identity of Manufacturer X was confidential information under the Confidentiality Agreements. Thus, plaintiff does not have a reasonable likelihood of success on its claim for breach of those Agreements for purposes of a TRO. *See Washington v. Indiana High School Athletic Association, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999) ("[i]n the preliminary injunction context, a 'likelihood of success' exists if the party seeking the injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits").

## 2. Trade Secret Misappropriation

To prevail on a claim for improper use of a trade secret under the Illinois Trade Secrets Act,[3] plaintiff must establish (1) the existence of a trade secret (not generally known in the industry); (2) misappropriation of the trade secret by Toolz; and (3) use of the trade secret in Toolz' business. *Composite Marine Propellers, Inc. v. Wan Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992); *MJ & Partners Restaurant Limited Partnership v. Zadikoff*, 10 F. Supp. 2d 922, 933 (N.D. Ill. 1998); *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 772 N.E.2d 768, 780 (2002). The burden is on plaintiff to demonstrate that Toolz misappropriated "concrete [trade] secrets." *Composite Marine Propellers*, 962 F.2d at 1266. To be a trade secret, information must be "sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to

---

[3] Toolz suggests that Wisconsin law may apply to the trade secret claim because David White was a Wisconsin company. Def. Mem., p. 10 n.3. Illinois and Wisconsin have both adopted the Uniform Trade Secrets Act, so the Court need not resolve this issue for purposes of this motion for a TRO. *See* 765 ILCS 1065/1 *et seq.*; Wis. Stat. Ann. §134.90.

7

maintain its secrecy or confidentiality." 765 ILCS 1065/2; *Mangren Research and Development Corp. v. National Chemical Co.*, 87 F.3d 937, 942 (7th Cir. 1996).

Toolz claims that the identity of Manufacturer X was not secret because Toolz learned about the company "entirely independent of David White" and "through publicly available information." Def. Mem., pp. 10-11. As noted, Toolz has presented evidence that Representative Y attends trade shows where it freely provides information about its business and the companies it represents, including Manufacturer X and David White, and that this information is also available in product catalogs. Qin Aff. ¶¶3-5; Lyon Aff. ¶8. This raises a substantial question as to whether the identity of plaintiff's manufacturer was "sufficiently secret" to constitute a trade secret. *See, e.g., Mangren Research and Development* Corp., 87 F.3d at 942 (secrecy requirement "precludes trade secret protection for information generally known within an industry even if not to the public at large"); *Service Centers of Chicago, Inc. v. Minogue*, 180 Ill. App. 3d 447, 454, 535 N.E.2d 1132, 1136 (1989) (real value of trade secret "lies in the fact that it is not generally known to others who could benefit [from] using it").

Moreover, Toolz has also raised at least some question as to whether plaintiff made reasonable efforts to maintain the secrecy of its manufacturer. *See, e.g., Thermodyne Food Service Products, Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1306-07 (N.D. Ill. 1996) ("if the owner failed to undertake reasonable efforts to prevent the trade secret from falling into the hands of competitors, the law will not provide the owner a remedy; in essence, the owner will be deemed to have abandoned the trade secret"). Plaintiff argues that it took steps to protect the information by making Toolz and Manufacturer X sign confidentiality and manufacturing agreements, respectively. Pl. Reply, p. 5. However, plaintiff presented no evidence that it had

8

employees sign confidentiality agreements; that it revealed the identity of Manufacturer X to a limited number of employees on a need-to-know basis; or that it kept information about Manufacturer X in a secure location with limited access. *Compare RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 874-75 (N.D. Ill. 2001) (reasonable efforts to protect confidential information included disclosure to employees on a "need-to-know" basis, password-protected computer databases and employee confidentiality agreements); *PepsiCo, Inc. v. Redmond*, No. 94 C 6838, 1996 WL 3965, at *16 (N.D. Ill. Jan. 2, 1996) (confidential information was disclosed on a need-to-know basis and regularly marked as confidential, and all employees with access to the information signed confidentiality agreements).

Plaintiff cites several cases which purportedly establish that the identity of a manufacturer is confidential. In *Sigma Chemical Co. v. Harris*, 794 F.2d 371 (8th Cir. 1986), the court agreed that product and vendor files containing, among other things, "the supplier's name, and price and quality information regarding products purchased from that vendor," were trade secrets because the plaintiff's "knowledge of which suppliers supplied which chemicals at the requisite quality and price was not in the public domain." In addition, the plaintiff had expended great cost and effort over 40 years to develop the information, which would have been difficult for a competitor to duplicate. *Id.* at 373-74. *See also Ackerman v. Kimball International, Inc.*, 634 N.E.2d 778, 783-84 (Ind. App. 1994) (lists of the plaintiff's numerous suppliers and their pricing schedules were protectable trade secrets in part because "it would be difficult for one of [plaintiff's] competitors to compile . . . a comprehensive supplier list" and obtain pricing information). Here, conversely, plaintiff is not seeking to protect vendor files containing supplier, pricing and quality information. And plaintiff only has one manufacturer so it cannot argue that it has a trade secret

based on "knowledge of which suppliers supplied which [parts]" of its optical levels. *Sigma Chemical*, 794 F.2d at 373-74. Nor has plaintiff presented any evidence that it spent considerable effort and money to locate Manufacturer X in the first place.

Contrary to plaintiff's suggestion, *Raven v. A. Klein & Co.*, 195 N.J. Super. 209, 478 A.2d 1208 (1984), has very little persuasive value because the court did not explain why the identity of the plaintiff's past and present suppliers was a trade secret. *Id.* at 214, 478 A.2d at 1210. And *Sovereign Chemical Co. v. Condren*, Nos. 18285 and 18465, 1998 WL 195876 (Ohio App. Apr. 22, 1998), is distinguishable on its facts. In *Sovereign Chemical*, the plaintiff sought to protect the identity of a certain chemical it discovered could be used as an antioxidant in the rubber industry. The supplier marketed that chemical for use in the adhesive industry, and knowledge of the supplier would automatically disclose that the plaintiff was using the chemical in the rubber industry. Thus, the identity of the supplier was subject to protection. Plaintiff, on the other hand, does not allege that knowledge of its supplier, in and of itself, would disclose any confidential trade secrets. Moreover, unlike plaintiff, the company in that case entered into confidentiality agreements with key employees, repeatedly admonished employees about the secrecy of the identity of the plaintiff's chemical supplier, and refused to divulge the information to any competitors, suppliers or customers.

On the facts before the Court, plaintiff has failed to demonstrate a reasonable likelihood of establishing that the identity of its manufacturer is a trade secret for purposes of a TRO.

**B.      Irreparable Harm**

Having determined that plaintiff presented insufficient evidence of a reasonable likelihood of success on the merits of its breach of contract and trade secret claims, the Court

10

need not address the issue of irreparable harm. *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 664 (7th Cir. 1995); *Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.*, 262 F.3d 1333, 1339 (Fed. Cir. 2001). Nevertheless, the Court notes that this factor also weighs against granting a TRO.

Irreparable harm is harm that cannot be compensated by money damages. *Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) ("the injury must be of a particular nature, so that compensation in money cannot atone for it") (internal quotations omitted). Plaintiff claims that it will suffer irreparable harm without a TRO because the Confidentiality Agreements contain a provision stating that plaintiff "shall be entitled to injunctive . . . relief . . . to prevent a breach or threatened or continuing breach of this Agreement." Pl. Mem., p. 6. Given the Court's finding that plaintiff has not shown a reasonable likelihood of success on the issue of breach, this is not sufficient to demonstrate irreparable harm.

Plaintiff also argues that it will be harmed because Toolz was able to "expedite introduction of its accused products from mere concept sketches to functional prototypes in a matter of weeks." Pl. Mem., p. 6. However, plaintiff has not made a sufficient showing that it could not be adequately compensated with money damages in the absence of a TRO. *See, e.g., Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial"). And given the Court's finding that plaintiff has not shown a reasonable likelihood of establishing a trade secret, there is no basis for presuming the inadequacy of legal remedies. *Compare IDS Life Insurance Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1281 (N.D. Ill. 1997) ("[t]he inadequacy

11

of legal remedies and the threat of irreparable harm are inherent in cases such as th[is] when the destruction of customer goodwill and trade secrets are at issue").

## CONCLUSION

For the reasons stated above, plaintiff's supplemental motion for a TRO (Docket Entry #8-2) is denied. Toolz' Motion to Strike Exhibit B to Plaintiff's Additional Memorandum in Support of TRO (Docket Entry #41-4) is denied as moot.

NAN R. NOLAN
United States Magistrate Judge

Dated: January 6, 2003