Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7156 | **DATE** | 5/14/2003 |
| **CASE TITLE** | DAVID WHITE INSTRUMENTS, LLC vs. TLZ, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Toolz Ltd.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted. TLZ, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAY 16 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 81 |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAY 15 AM 9:26 | date mailed notice | |
| | LG courtroom deputy's initials | CLERK U.S. DISTRICT COURT Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**
MAY 1 6 2003

| | |
|---|---|
| DAVID WHITE INSTRUMENTS, LLC, ) <br> f/k/a DAVID WHITE FORMATION, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TLZ, INC., d/b/a TOOLZ, INC.; and ) <br> TOOLZ LIMITED, ) <br> ) <br> Defendants. ) | Case No. 02 C 7156 <br><br> Honorable John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, David White Instruments, LLC ("Plaintiff"), filed a seven-count complaint against Defendants, TLZ, Inc., doing business as Toolz, Inc., and Toolz Limited (collectively "Defendants"), alleging patent infringement (Count I); trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a) (Count II); violations of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.* (Count III), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (Count IV), and the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065 (Count VII); unfair competition under Illinois law (Count V); and breach of contract (Count VI).

Defendant, Toolz Limited ("Toolz"), moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss the complaint for lack of personal jurisdiction. Defendant, TLZ, Inc. ("TLZ"), moves, pursuant to Rule 12(b)(6), to dismiss Counts II, III, IV, V, and VI of the complaint. For the reasons that follow, Toolz Limited's Motion to Dismiss Pursuant to Rule 12(b)(2) is granted; and TLZ's Motion to Dismiss Pursuant to Rule 12(b)(6) is denied.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'... he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

For purposes of these Motions to Dismiss, the following allegations are taken as true.

Plaintiff is a limited liability company organized under Illinois law with its principal place of business in Bradley, Illinois. TLZ is a California corporation with its principal place of business in California. Toolz is a corporation organized under Chinese law with its principal place of business in Hong Kong.

Plaintiff is among the leading suppliers of optical and laser instruments and related accessories to the building and construction industries in the United States. The "David White" name is associated with reliable, high-quality instruments. Until May 2002, David White, LLC was

the company supplying the "David White" line of instruments.

On April 29, 2002, David White, LLC assigned to American National Bank and Trust Company of Chicago ("ANB") U.S. Design Patent No. D440,506 ("the '506 patent"), which was issued on April 17, 2001. The '506 patent claims a design for an "optical automatic level." The design claimed in the '506 patent provides a "unique overall aesthetic impression". Plaintiff sells automatic levels embodying the '506 patent in the "AL8" product line.

Since 1984, David White, LLC manufactured and sold manual levels and level-transits nationally under the name "Meridian". The "Meridian" line has a unique and distinctive overall appearance and design. Due to David White, LLC's advertising and promotion of the instruments and the unique and distinctive appearance of the "Meridian" line, "a relevant segment of the general public" associates the "Meridian" line with Plaintiff and the "David White" name.

On May 24, 2002, Plaintiff and ANB, a secured creditor-in-possession of the assets of David White, LLC, executed a Bill of Sale ("Bill of Sale") under which Plaintiff purchased substantially all of the assets of David White, LLC pursuant to an Article 9 of the Uniform Commercial Code ("UCC") sale ("the Article 9 Sale"). Plaintiff spent significant amounts of money to obtain these assets due to the substantial goodwill that developed over many years in the "David White" mark and the unique and distinctive instrument design.

Under the Bill of Sale (which is attached as Exhibit A to the complaint), Plaintiff purchased, among other things, David White, LLC's "intangible assets", including:

> (a) patents, trademarks, trade secrets, trade names, names, brands, methods of doing business and other intellectual property and all goodwill associated with any of the foregoing; (b) drawings, service manuals, prints, designs, developments and product drawings; (c) telephone and facsimile numbers (to the extent of [David White, LLC's] interest therein); (d) [David White, LLC's] website and e-mail addresses; (e)

> customer lists and (f) all of [David White, LLC's] interest as licensor in licenses, and all rights to payment which accrue in the future under licensing agreements, arising out of any of the foregoing . . . .

(Compl. Ex. A ¶ 2.) Plaintiff also purchased "[a]ll causes of action, including commercial tort claims, arising out of or related to the Assets, including rights to enforce the items in 2 above (but excluding causes of action to enforce those assets excluded by G below) . . . ." (*Id.* ¶ 5.) On May 24, 2003, ANB assigned the '506 patent to Plaintiff.

Plaintiff's trade secrets include, among other things, detailed sales analyses, customer lists and information regarding the design, manufacture, and costing of "David White" products. These trade secrets are not generally known and cannot be learned from inspection of Plaintiff's products or any public information. Plaintiff requires parties to sign confidentiality agreements before it discloses any trade secrets.

At the time that Plaintiff was negotiating the Article 9 Sale, TLZ began similar negotiations with David White, LLC. During negotiations, TLZ executed a Confidentiality Agreement with Michael S. Polsky, the Chapter 128 Receiver for David White, LLC, which is attached to the complaint as Exhibit E. The Confidentiality Agreement defined "confidential information" as

> any financial, operational, technical or other information relating to the businesses and affairs of [David White, LLC], which information is provided to [TLZ] in connection with the proposed discussions regarding [a possible sale of assets], whether such information is provided in written, oral, graphic, pictorial or recorded form or stored on computer discs, hard drives, magnetic tape or digital or any other electronic medium. It is understood that the term "Confidential Information" does not mean and include information which:
>     (a) is or subsequently becomes publicly available other than due to [TLZ's] breach of this Agreement and [TLZ] can prove this by manifest and clear evidence; or,
>     (b) prior to disclosure hereunder is with the possession of [TLZ] and [TLZ] can prove this by manifest and clear evidence.

(Compl. Ex. E at 15.) The Confidentiality Agreement also provided that:

> [t]he Confidential Information shall (a) be kept confidential by [TLZ] and not disclosed to any other individual, entity or party (except as provided in this section 3) and (b) not be used by [TLZ] for any commercial or competitive purpose whatsoever and may only be used in connection with the discussions relating to the [possible sale of assets].

(*Id.* at 16.) The Confidentiality Agreement provided that "[t]his Agreement shall be construed and enforced in accordance with the internal laws of the State of Wisconsin." (*Id.* at 17.)

Defendants displayed and offered for sale at the National Hardware Show held in Chicago, Illinois, from August 11-13, 2002 ("the Chicago trade show") and the Handy Hardware Show held in Houston, Texas, from September 19-22, 2002 ("the Houston trade show") automatic levels bearing the mark "Robotoolz", which were similar to the design claimed in the '506 patent. Defendants also displayed and offered for sale at these shows manual levels and level-transits bearing the mark "Robotoolz" that were similar to the "Meridian" line's design. Defendants' alleged infringement of the '506 patent and the "Meridian" trade dress was facilitated by Defendants' misappropriation of trade secrets that were disclosed to TLZ pursuant to the Confidentiality Agreement and the hiring of a former David White, LLC employee, David Statza ("Statza"), who disclosed additional trade secrets.

Prior to joining TLZ, Statza met with Ash Puri ("Puri"), the president of Chicago Steel Tape Company, which shares common ownership with Plaintiff. During that meeting, Statza disclosed information which Puri concluded was confidential information regarding David White, LLC, including sales analyses, customer lists, and costing information regarding "David White" products. Statza told Puri that, if Statza were hired by Chicago Steel Tape Company, Statza would share the

confidential information. The complaint alleges that TLZ now possesses and has used for commercial purposes Plaintiff's trade secrets by virtue of Statza's employment. Shortly after hiring Statza, Defendants introduced the allegedly infringing product line.

## DISCUSSION

*Toolz's Motion to Dismiss for Lack of Personal Jurisdiction*

Toolz argues that this Court lacks personal jurisdiction over it and that it should be dismissed as a defendant.

In patent cases, the Court applies the law of the Federal Circuit in determining whether to exercise personal jurisdiction over a defendant. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). "Because of supplemental jurisdiction under 28 U.S.C. § 1367, . . . the propriety of jurisdiction in light of federal due process for both the state law claims and the federal patent law claims is to be analyzed using Federal Circuit law." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377-78 (Fed. Cir. 1998).

Plaintiff bears the burden of establishing personal jurisdiction. *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996); *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D Sys., Inc.*, 160 F.3d at 1376-77. The Illinois long-arm statute provides, among other enumerated acts, that Illinois state courts may exercise personal jurisdiction over defendants "on any other basis . . . permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. § 5/2-209(a)(1), (7), (c). "Because of this, 'the statutory analysis collapses into a due process inquiry, and [the court] need not consider whether defendants

engaged in any of the acts enumerated in the long-arm statute.'" *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 834 (N.D. Ill. 2000) (quoting *LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 735 (N.D. Ill. 1999)). For an exercise of personal jurisdiction to satisfy due process, the defendant must have minimum contacts with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Beverly Hills Fan Co.*, 21 F.3d at 1565 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The minimum contacts must be "purposeful", meaning that "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "'The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" *Beverly Hills Fan Co.*, 21 F.3d at 1566 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).

Plaintiff argues in its brief in opposition that Toolz has placed its products in the stream of commerce; and, therefore, this Court's exercise of personal jurisdiction over Toolz would not offend due process because (1) Toolz's website, www.robotoolz.com, encourages visitors to download images and information of the allegedly infringing products; (2) Toolz's website contains an admission that it manufactures the "Robotoolz" product line and that its products are sold through retail, catalog and industrial distribution in the United States; (3) Toolz's website provides direct links to retailers selling the allegedly infringing products; and (4) Toolz's website can locate the nearest retailer selling the allegedly infringing products.

A website can be a purposeful contact with the forum state for purposes of personal

jurisdiction. *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 837. Courts have held that an exercise of personal jurisdiction is proper where a defendant clearly does business with residents of the forum state over the Internet, *i.e.*, the website is "interactive." *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

This Court has addressed this issue in *Aero Products International, Inc. v. Intex Corporation*, 64 U.S.P.Q.2d 1772, 1777 (N.D. Ill. 2002).

> In weighing the issue of personal jurisdiction in the context of the Internet, courts typically use a sliding scale analysis to ascertain what level of Internet interaction subjects a defendant to personal jurisdiction. . . . The analysis consists of three levels: (1) where the defendant conducts business over the Internet through its active website; (2) where the defendant maintains an interactive website; and (3) where the defendant maintains a passive website.
> 
> . . .
> 
> The first category consists of situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction . . . Over the Internet, personal jurisdiction is proper. . . . Websites in this category are interactive and allow for [a] transaction between the user and the website owner.
> 
> . . .
> 
> The second category is occupied by interactive websites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.
> 
> . . .
> 
> The final category consists of situations where a defendant has simply posted information on an Internet website which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.

*Aero Prods. Int'l, Inc.*, 64 U.S.P.Q.2d at 1776 (internal quotation marks and citations omitted). Intex Corporation did not maintain or design the intexcorp.com website, and users were unable to purchase products directly from the website. The intexcorp.com website provided links to a site where Intex Corporation's products could be purchased. The Court concluded that the plaintiffs had not

established personal jurisdiction because (1) visitors were not able to purchase items directly from Intex Corporation's website, (2) no information was exchanged between the visitor and the site, (3) visitors could only purchase products from sites that were separate and distinct from Intex Corporation's website, and (4) there were no allegations that the intexcorp.com advertisement was specifically targeted at Illinois residents or that Illinois residents had purchased items after visiting intexcorp.com. *Aero Prods. Int'l Inc.*, 64 U.S.P.Q.2d at 1777. The Court reasoned that "'[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.'" *Aero Prods. Int'l Inc.*, 64 U.S.P.Q.2d at 1777-78 (quoting *Asahi-Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)).

Similarly, here, the website is not interactive. Visitors of robotoolz.com cannot purchase the allegedly infringing products from Toolz's website. Rather, consumers who wish to purchase an allegedly infringing product must visit an unaffiliated website, internationaltool.com. The allegations in the complaint do not reasonably support the inference that the robotoolz.com site is directed specifically at Illinois residents. No information is exchanged other than a list of local retailers when the visitor to the site enters his zip code. The site is merely an advertisement that tells the consumer where Toolz's products can be found. "Generally, national advertisements (including those on the internet) are insufficient to subject a defendant to jurisdiction in Illinois." *Aero Prods. Int'l Inc.*, 64 U.S.P.Q.2d at 1777. The Court lacks general jurisdiction over Toolz.

Plaintiff argues that specific jurisdiction over Toolz exists in Illinois.

"Specific jurisdiction exists when a non-resident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable." *3D Sys., Inc.*, 160 F.3d at 1378 (citing *Rudzewicz*, 471

U.S. at 472). Specific jurisdiction exists where (1) the defendant purposefully directs its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair. *3D Sys., Inc.*, 160 F.3d at 1378; *see also Euromarket Designs*, 96 F. Supp. 2d at 834.

The patent law of the United States provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent . . . infringes the patent." 35 U.S.C. § 271(a) (2003). An act of patent infringement in the forum is sufficient to establish specific jurisdiction. *Beverly Hills Fan Co.*, 21 F.3d at 1565.

Plaintiff argues that Toolz has committed acts of patent infringement, offering to sell the allegedly infringing products, in the Northern District of Illinois based on Toolz's website and the Chicago trade show. As discussed in greater detail above, Toolz's website is not a purposeful minimum contact with the Northern District of Illinois.

The complaint alleges that "Defendants" offered to sell the allegedly infringing products at the Chicago trade show. Plaintiff claims this as a basis for specific jurisdiction. However, the affidavit of James W. Lyon, the Managing Director of Hong Kong Operations of Toolz, states that "Toolz has not sold, and does not sell, and has not offered and does not offer to sell these or any other products or services either in the state of Illinois . . . or the United States[,] generally." (Toolz's Mem. Supp. Mot. Dismiss, Ex. 1, Lyon Aff. ¶ 4.) Thus, Toolz lacks minimum contacts with the Northern District of Illinois.

Finally, even if Toolz has minimum contacts with the Northern District of Illinois, the Court must determine whether an exercise of specific jurisdiction would be reasonable and fair. "In

general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co.*, 21 F.3d at 1568.

An exercise of specific jurisdiction would not be reasonable and fair because it has no offices, property or contracts in Illinois; it does not manufacture any products in Illinois; it has no employees or shareholders in Illinois; and its principal place of business is in Hong Kong. Toolz's connections with the forum are not such that it should reasonably anticipate being haled into court here. *See Rudzewicz*, 471 U.S. at 474. Therefore, its Motion to Dismiss for Lack of Personal Jurisdiction is granted.

*TLZ's Motion to Dismiss for Failure to State a Claim*

TLZ argues that Count II fails to state a claim for trade dress infringement because (1) Plaintiff does not allege the elements of a protectable trade dress and (2) the claimed trade dress is functional.

The Lanham Act provides that:

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (2003).

It is well established that trade dress can be protected under federal trademark law. The design or packaging of a product may acquire a distinctiveness which serves to

-11-

> identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods.

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001). In order to state a claim of trade dress infringement, Plaintiff must allege that (1) its trade dress is inherently distinctive or has acquired secondary meaning, (2) the similarity of the defendant's trade dress creates a likelihood of confusion on the part of consumers, and (3) its trade dress is non-functional. *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1016 (N.D. Ill. 1993).

TLZ argues that the allegations of a trade dress are too vague and general to allege a protectable trade dress.

Count II alleges that Defendants have sold or offered to sell manual levels and level-transits that are similar to the Meridian product line, that these sales and offers to sell have created a likelihood of confusion or misunderstanding as to the origin, sponsorship, or approval of Defendants' products by Plaintiff. The complaint alleges that Plaintiff has sold the Meridian product line since 1984 and that "[a]s a result of its unique and distinctive overall appearance, as well as [Plaintiff's] extensive advertising and promotion of the instruments, the total image, shape, configuration, overall look, appearance and impression of the Meridian [line] has caused a relevant segment of the general public to now associate the Meridian [line]" with Plaintiff and the "David White" brand name. (Compl. ¶¶ 17, 19.) The complaint also contains photographs and illustrations of the Meridian product line.

Count II adequately alleges a protectable trade dress. The complaint does not allege that the Meridian product line's design is registered on the principal register. However, the complaint does

allege that the Meridian product line has acquired secondary meaning, *i.e.*, that "'in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself'" and, thus, is protectable. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 1343, 1346 (2000) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, n.11 (1982)). The allegations in the complaint set out sufficient factual matter to outline the elements of a trade dress infringement claim. *See Benson*, 761 F.2d at 338. Plaintiff could prove some set of facts to support the allegations in its claim; and, therefore, dismissal on this basis is improper. *Strasburger*, 143 F.3d at 359.

TLZ next argues that Count II should be dismissed because it does not allege that the claimed trade dress is non-functional.

A feature is functional when (1) it is essential to the use or purpose of the article, (2) it affects the cost or quality of the article, or (3) exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage. *TrafFix Devices*, 532 U.S. at 32 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)). "In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). Whether a trade dress is functional is a question of fact, *see, e.g., Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1002 (2d Cir. 1997); *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1039 (11th Cir. 1996); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995), and, therefore, not appropriate for consideration on a motion to dismiss. Some set of facts could exist to support a claim that the Meridian product line's design is non-functional; and, therefore, TLZ's Motion to Dismiss is denied with respect to Count II.

*Strasburger*, 143 F.3d at 359.

TLZ argues that Plaintiff's claims for violations of the Illinois Uniform Deceptive Trade Practices Act (Count III) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV) and Illinois common law of unfair competition (Count V) should be dismissed because they "are nothing more than Plaintiff's federal trade dress claims cloaked in state law causes of action." (TLZ Mem. Supp. Mot. Dismiss at 7.) TLZ argues that because Plaintiff's trade dress claim under the Lanham Act in Count II fails to state a claim on which relief can be granted, Counts III, IV, and V, which are based on the same conduct, also fail to state a claim upon which relief can be granted. As was noted earlier, Count II adequately states a claim for trade dress infringement. Therefore, TLZ's Motion Dismiss is denied as to Counts III, IV, and V.

TLZ argues that Plaintiff's claim for breach of the Confidentiality Agreement (Count VI) should be dismissed because Plaintiff failed to allege that it has standing to bring such a cause of action.

As set out above, the Bill of Sale confers on Plaintiff standing to sue for "all causes of action — arising out of or related to the Assets," which include all "general intangibles", such as patents, trade dress, trade secrets, etc. Count VI is related to those "general intangibles". TLZ was required to sign the Confidentiality Agreement to protect the intellectual property rights of the corporation. These intellectual property rights were transferred to Plaintiff under the Bill of Sale. Thus, Plaintiff does have standing to sue for breach of the Confidentiality Agreement; and, therefore, TLZ's Motion to Dismiss is denied as to Count VI.

## CONCLUSION

For the reasons stated herein, Toolz Ltd.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted. TLZ, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: May 14, 2003